UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

A.C. STEELMAN, FRAN
MCDERMOTT, TRUSTEES OF
THE SACRAMENTO AREA
ELECTRICAL WORKERS' PENSION
TRUST FUND, as successor to
and as TRUSTEES on behalf
of SACRAMENTO VALLEY
ELECTRICAL WORKERS' PENSION
TRUST,

     Plaintiff,

         NO. CIV. S-06-2746 LKK/GGH

   v.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
PRUDENTIAL FINANCIAL, INC.,        O R D E R

     Defendants.
_____/

     Plaintiffs, trustees of the Sacramento Area Electrical Workers Pension Trust Fund ("Area Trust"), bring suit against Prudential Insurance Company of America, a New Jersey company, ("defendants") pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132, 1140.  Plaintiffs' complaint alleges that defendants violated the terms of the service and annuity agreements when it failed to provide plaintiffs with demutualization shares.

1   Pending before the court is defendants' motion to dismiss for lack
2   of subject matter jurisdiction, failure to state a claim and
3   improper venue.

**I.**

**BACKGROUND & FACTUAL ALLEGATIONS**

6       The factual allegations as set forth by plaintiffs are quite
7   obscure.  What follows is the court's best attempt at deciphering
8   the relevant facts and claims.

9   **A.   The Group Annuity Contracts**

10      At issue in this case are two annuities issued by Prudential.
11  In 1982, the trustees of the Sacramento Valley Electrical Workers
12  Pension Trust ("The Valley Trust") terminated the Valley Trust and
13  all assets were liquidated.  At this time, the trustees purchased
14  two annuities from Prudential to "provide accrued benefits to
15  participants of the Valley Trust pension plan." Compl. ¶ 7.  The
16  parties appear to concede that the two annuities are employee
17  benefit pension plans governed by the Employee Retirement Income
18  Security Act (ERISA).

19      When the Valley Trustees purchased the annuity contracts, they
20  named themselves as the contract holders.  See GA-8811, GA-8812,
21  Verpent Decl, Exh. 1, 2.[1]  Soon thereafter, Valley Trust resigned

---

[1]     Because the complaint makes reference to both annuity
contracts, the court may consider the content of these contracts
in deciding the pending motion to dismiss. "Even if a document is
not attached to a complaint, it may be incorporated by reference
into a complaint if the plaintiff refers extensively to the
document or the document forms the basis of the plaintiff's claim."
U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). The "district
court may treat such a document as part of the complaint, and thus

from the contract and wrote to Prudential that "the contract holder
as referred to in the [contract] no longer exists, and there will
be no successor appointed."   See March 25, 1983 Letter to D.
Kostenbader, Verpent Decl. Ex. 4.[2]  Important for the purposes
of this motion is the fact that the contract only named the Valley
Trust participants (and not plaintiffs) as the contract holders.

Plaintiffs assert that the annuities contracts remained in
operation and that from 1982 on, Prudential sent all correspondence
related to the annuities to the Valley Trust participants in care
of the Area Trust and/or IBEW Local 340.  The Area Trust responded
to Prudential inquires, "interfaced with plan participants, and
exchanged data with Prudential."  Compl. ¶ 14.   Plaintiffs were
not, however, the named contract holder on the annuities.

Plaintiffs did not officially enter the picture until the fall
of 2006.   On November 15, 2006, plaintiffs were appointed as
"successor trustees of the Valley Trust with all rights and powers
of the Valley Trustees."  Compl. ¶ 19.  It was at this time that
plaintiffs assert that they were assigned the "rights" of the
Valley Trust and became "successors" to the Valley Trustees.

may assume that its contents are true for purposes of a motion to
dismiss under Rule 12(b)(6)."  Id.

    [2]   The parties dispute how the court should view this
letter.   Plaintiffs aver that the court should disregard the
letter, yet spend half of their brief discussing its meaning.
Given that the letter is not itself referenced in the complaint or
relied upon for the basis of the complaint, the court will not
consider it.  As explained in the order, the letter appears to be
immaterial relative to how the court resolves the pending motion.

## B.    Prudential's Demutualization

When the annuities were purchased, Prudential was organized as a mutual insurance company under New Jersey law.  "A mutual insurance company has no shareholders and is instead owned by its policyholders." James A. Smallenberger, Restructuring Mutual Life Insurance Companies: A Practical Guide Through the Process, 49 Drake L. Rev. 513, 516 (2001).  Those who purchased policies from mutual insurance companies received both membership interests (e.g., the right to elect directors and the right to receive a proportionate share of the company if it liquidates) and contract rights (i.e., the obligations of the insurance company under the policy). Id. at n. 4.

In 2000, Prudential adopted a plan to demutualize, that is, to reorganize from a mutual life insurance company to a stock life insurance company.  The demutualization plan was approved by the New Jersey Insurance Commissioner.[3]  As a result of the demutualization, the entire value of Prudential was allocated among Prudential's eligible policy holders in accordance with terms set out in the demutualization plan.

The demutualization plan provided that the entire value of Prudential would be allocated to "owners" of "eligible policies" in the form of cash, policy credits or common stock in a newly created holding company.  See demutualization plan, Def.'s Request

---

[3]     The demutualization plan is sometimes referred to as the reorganization plan.

4

1    for Judicial Notice, Ex. 1.[4]   The demutualization plan also
2    explained that demutualization "will not adversely change existing
3    contractual provisions as to premiums, policy benefits, dividend
4    eligibility, values, guarantees or other current policy obligations
5    of [Prudential] to its Policyholders." <u>See</u> Plan, Art. II.

6        The demutualization plan defined "the Owner of . . . a group
7    annuity contract . . . [as] the Person or Persons specified as the
8    policyholder or contract holder in the master policy or contract,
9    as reflected in the applicable Records" of Prudential as of
10   December 15, 2000 (the Adoption Date).   <u>See</u> Plan, § 5.3.   The plan
11   further provided that "the identity of the Owner of a Policy shall
12   be determined without giving effect to any interest of any other
13   Person in such Policy." <u>See</u> Plan, § 5.6.

14       Finally, the demutualization plan provides that should a
15   contract holder not be located, the demutualization proceeds would
16   be paid in cash and escheated to the state where the contract was
17   issued.   <u>See</u> Plan, § 8.1(f).

18       Plaintiffs aver that on September 1, 2003 a dividend check in
19   the amount of $27,000.00 was issued to the Valley Trust and sent
20   in care of the Area Trust.   Compl. ¶ 16.   Shortly thereafter,
21   Prudential demanded return of the proceeds denying "that either
22   [sic] the Area Trust nor the Valley Trust was entitled to the
23   dividend check or the underlaying shares of stock under the plan

24   _____

25       [4]   Because plaintiffs' complaint makes direct reference to
     the demutualization plan, the court finds it proper to take
26   judicial notice of the plan.   <u>See</u> fn. 1.

                              5

1  of reorganization. . . Under protest, Area Trust returned the

2  proceeds. . ." <u>Id.</u>

3      Prudential, in its motion to dismiss, avers that Valley Trust

4  was defunct and that therefore, Prudential did not know the correct

5  identity of the contract holder for the two annuities.

6  Accordingly, Prudential escheated the demutualization proceeds to

7  California's State Controller, in accordance with California's

8  unclaimed property law ("UPL").[5]

9  **C.   Plaintiffs' Complaint**

10     Plaintiffs aver that on or about June 1, 2006 the AREA Trust

11  became aware of the nature of the demutualization shares issued to

12  the Valley Trust, and that the value might exceed $1,000,000.

13  Compl. ¶ 17.[6]  Plaintiffs aver that they were making this demand

14  as "successor contract-holders under paragraph 2.3 of the group

15  annuity contract, the terms of the Valley Trust, as assignee under

16  the terms of the demutualization plan and applicable law." <u>Id.</u>

---

18  [5]    Though not stated in plaintiffs' complaint, defendants
    concede in their motion that $2.1 million was escheated to the
19  State Controller.  Plaintiffs, in their opposition, assert that
    they did not know that the funds at issue had been escheated to the
20  state.  Plaintiffs argue that the issue of escheatment should not
    be before the court because defendants "refused to provide any
21  proof of escheat when first advising plaintiffs['] counsel of the
    escheat in December 2006.  Claim could not be made by plaintiffs
22  with the Controller until February, two months after suit was
    filed."  <u>See</u> Pls.' Opp'n to Mot. To Dismiss at 17 n .7    In
23  plaintiffs' status report, filed on March 2, 2007, plaintiffs state
    that they have filed a claim with the State Controller for the $2.1
24  million.

25  [6]    In their opposition brief, plaintiffs' claim that they
    are, in fact, entitled to over $6,000,000.00, which is equal to the
26  value of 74,000 shares of stock in Prudential. <u>See</u> Pls.' opp'n to
    Def.'s Mot. to Dismiss at 4.

1    When plaintiffs approached Prudential regarding their claim
2  for demutualization shares, they were informed that Prudential
3  could not make the transfer.  Specifically, Prudential claimed that
4  the assets attributable to the Valley Trust could not be
5  transferred to plaintiffs and doing so would violate the
6  reorganization plan as well as the terms of the contract.  Compl.
7  ¶ 18.  Plaintiffs aver that Prudential "continues and refuses to
8  issue the shared and accrued dividends resulting from the
9  demutualization."  Compl.  ¶ 20.

10    Plaintiffs bring two causes of action.  Neither cause of
11  action mentions ERISA.[7]  The first cause of action asserts that
12  Prudential breached the terms of the annuity and service agreements
13  as well as the demutualization plan when it failed to provide
14  plaintiffs with demutualization shares.  The second cause of action
15  is entitled "Pendent State Law Claim for Breach of Contract" and
16  sets forth the same claim, namely, that Prudential breached the
17  terms of the annuity contracts and the demutualization plan.

18    Plaintiffs seeks declaratory relief that they are entitled to
19  the funds.  Plaintiffs also seek specific performance, namely the
20  value of the demutualization shares.  Plaintiffs ask that the court
21  impose both a resulting and constructive trust on the
22  demutualization shares.

23                                    **II.**

24  _____

25      [7]    In fact, there is almost no mention of ERISA in the
     entire complaint.  ERISA is mentioned once with respect to
26  jurisdiction and once in the context of the pension plans being
     governed by ERSIA.

7

1

**STANDARDS**

2

**Standard for Dismissal Pursuant to
Federal Rule of Civil Procedure 12(b)(6)**

3

4

On a motion to dismiss, the allegations of the complaint must

5

be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

6

The court is bound to give the plaintiff the benefit of every

7

reasonable inference to be drawn from the "well-pleaded"

8

allegations of the complaint. See Retail Clerks Intern. Ass'n,

9

Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6(1963).

10

Thus, the plaintiff need not necessarily plead a particular fact

11

if that fact is a reasonable inference from facts properly alleged.

12

See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

13

(inferring fact from allegations of complaint).

14

In general, the complaint is construed favorably to the

15

pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So

16

construed, the court may not dismiss the complaint for failure to

17

state a claim unless it appears beyond doubt that the plaintiff can

18

prove no set of facts in support of the claim which would entitle

19

him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69,

20

73(1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In

21

spite of the deference the court is bound to pay to the plaintiff's

22

allegations, however, it is not proper for the court to assume that

23

"the [plaintiff] can prove facts which [he or she] has not alleged,

24

or that the defendants have violated the ... laws in ways that have

25

not been alleged." Associated General Contractors of California,

26

Inc. v. California State Council of Carpenters, 459 U.S. 519,

8

526(1983).

## Standard for Dismissal Pursuant to
## Federal Rule of Civil Procedure 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction, the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936); Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

If the challenge to jurisdiction is a facial attack, i.e., the moving party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. The factual allegations of the complaint are presumed to be true, and the motion is granted only if plaintiff fails to allege an element necessary for subject matter jurisdiction. See 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, ¶ 12.07 (2d ed. 1987); see also Eaton v. Dorchester Development, Inc., 692 F.2d 727, 731 (11th Cir. 1982); Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981); Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977). A complaint will be dismissed for lack of subject matter jurisdiction (1) if the case

does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute.  Baker v. Carr, 369 U.S. 186, 198 (1962).

### III.

### ANALYSIS

As best the court can understand this convoluted case, plaintiffs' complaint fails to set forth sufficient factual allegations to support a claim under ERISA.  The court addresses each issue in turn and concludes that the complaint must be dismissed with leave to amend.[8]

**A.   California's Unclaimed Property Law**

Before addressing the more substantive arguments raised by both parties, the court addresses a more practical and threshold consideration, namely, that defendants, pursuant to California's

---

[8]     As a threshold matter, the court quickly disposes of defendants' argument that this claim may only be brought in the New Jersey Appellate Division.  First, defendants fail to explain why this court is bound to follow New Jersey state law and why ERISA would not preempt New Jersey state law.  Moreover, defendants' reliance on Wright v. The Prudential Ins. Co. of Amer., 285 F. Supp. 2d 515 (D.N.J. 2003) is misplaced.  The Wright decision involved a settlement agreement in which the bound parties agreed to bring claims against Prudential in New Jersey State court. Moreover, the Wright case was not brought pursuant to ERISA.  Here, the claims are brought pursuant to ERISA and there is no settlement agreement which governs where these plaintiffs may bring suit. Finally, defendants argue that plaintiffs are directly challenging the New Jersey Insurance Commissioner's decision to approve Prudential's demutualization plan.  While the complaint is less than clear, the court cannot agree that this is a fair reading of the allegations.

1   Unclaimed Property Law ("UPL"), have escheated to the state the

2   very funds that plaintiffs seek.[9]

3        **1.   Brief Overview of the California UPL**

4        "The UPL establishes the conditions under which certain

5   unclaimed personal property escheats to the state.  The UPL is not

6   a permanent or 'true' escheat statute.  Instead, it gives the state

7   custody and use of unclaimed property until such time as the owner

8   claims it."  Harris v. Westly, 116 Cal. App. 4th 214, 219 (2004);

9   See also Cal. Civ. Proc. Code §§ 1530, 1532, 1571.

10  The UPL's dual objectives are "to protect unknown owners by

11  locating them and restoring their property to them and to give the

12  state rather than the holders of unclaimed property the benefit of

13  the use of it, most of which experience shows will never be

14  claimed."  Id., citing Douglas Aircraft Co. v. Cranston,  58 Cal.

15  2d 462, 463 (1962).[10]

16        The owner whose property has been escheated to the state may

17  file a claim with the State Controller.  Cal. Civ. Pro. Code § 1540

18  ("Any person . . . who claims an interest in property paid or

19  _____

20        [9]    At oral argument, counsel for plaintiffs represented
    that Prudential had recently changed the basis for the escheatment
21  of demutualization consideration.  Subsequent to oral argument,
    counsel for defendants filed a response to plaintiffs' allegation.
22  In the brief, defendants assert that the basis of escheatment did
    not change, "rather . . .Prudential merely corrected an inaccurate
23  truncation of the name of the entity on whose behalf the
    escheatment was made."  See Defs.' Response to Assertion by Pls.'s
24  Counsel that Basis for Escheatment Was Changed at 1.  Counsel for
    plaintiffs filed a reply.  For purposes of the pending motion, the
25  court need not analyze defendants' statements.

26        [10]    So much for the first reason.

                                 11

delivered to the Controller under this chapter may file a claim to the property or to the net proceeds from its sale.") If the Controller wrongfully denies the claim, the claimant may file suit and name the Controller as the defendant. Id. § 1541.[11]

Once property has been escheated to the state, the former holder of the property "is relieved of all liability to the extent of the value of the property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to the property." Id. § 1560(a).[12]  In California, a corporation "escheating stock is immune from an owner's suit for recovery of the stock, for interest, for damages stemming from the delivery of the stock to the Controller, and for any similar type of liability." Harris v. Verizon Communications, 141 Cal. App. 4th 573, 576 (2006).

    **2.    The Applicability of the UPL & ERISA Preemption**

-----

[11]    Section 1541 reads, in pertinent part:

>      Any person aggrieved by a decision of the Controller or as to whose claim the Controller has failed to make a decision within 180 days after the filing of the claim, may commence an action, naming the Controller as a defendant, to establish his or her claim in the superior court in any county or city and county in which the Attorney General has an office.

[12]    However, "any holder who has paid moneys to the State Controller pursuant to this chapter may make payment to any person appearing to such holder to be entitled thereto," and at that point, the Controller will reimburse the holder. Id. § 1560(b). Because the statute appears to be discretionary, it would not appear to provide any rights to plaintiffs.

1    In their opposition brief, plaintiffs make two claims with

2    respect to the escheated funds: first, plaintiffs claim that they

3    did not know of the escheatment prior to filing the complaint and

4    second, that they are owed more than the amount escheated.

5    Plaintiffs also state in their most recently filed status report

6    that they have filed a claim with the State Controller to receive

7    the escheated funds.  Defendants, on the other hand, argue that

8    since the funds have been escheated, under the UPL they are immune

9    from suit and plaintiffs' only remedy is to seek the funds from the

10   State Controller.

11   With respect to the funds which have been escheated, there is

12   a threshold question of whether ERISA preempts the UPL.  See e.g.,

13   Manufacturers Life Ins. Co. v. East Bay Restaurant and Tavern

14   Retirement Plan, 57 F. Supp. 2d 921 (N.D. Cal. 1999) (ERISA

15   preempts UPL in certain circumstances), but see Aetna Life Ins. Co.

16   v. Borges,869 F.2d 142 (2nd Cir. 1989) (ERISA does not preempt

17   UPL).

18   However, the only way that ERISA would preempt the UPL in this

19   case is if plaintiffs can state a claim under ERISA.  If plaintiffs

20   cannot state a claim under ERISA, the UPL governs.  In other words,

21   if the court finds that what plaintiffs seek is not covered by

22   ERISA (i.e., that demutualization proceeds are not a benefit

23   covered by ERISA), then it is not necessary to determine if ERISA

24   preempts the UPL because plaintiffs do not state a claim under

25   ERISA.

26   If plaintiffs can state a claim under ERISA, then the court

1   must resolve the question of whether ERISA preempts the UPL.  As

2   discussed below, plaintiffs fail to state a claim under ERISA and

3   therefore, the court need not address ERISA preemption at this

4   point.[13]

5   **B.    Failure to State a Claim**

6        Even when drawing all reasonable inferences in plaintiffs'

7   favor, the factual allegations set forth in the complaint fail to

8   state a claim under ERISA.  First, plaintiffs fail to set forth

9   allegations  which  would,  if  true,  entitle  them  to  the

10  demutualization proceeds pursuant to ERISA.  Second, plaintiffs

11  seek legal relief and the applicable section of ERISA only provides

12  for equitable relief.

13       **1.    Plaintiffs'  Entitlement  to  the  Proceeds  from
            Demutualization Pursuant to ERISA**
14
         Plaintiffs' complaint fails to cite to the section of ERISA
15
    which they allege governs their claims for relief.
16
              **a.    Statutory Framework**
17
         The Employee Retirement Income Security Act ("ERISA"), 29
18
    U.S.C. § 1001 et. seq., was enacted as a comprehensive regulation
19
    of private employee benefit plans for the purpose of protecting
20
    their participants and beneficiaries.  See Aetna Health Inc. v.
21
    Davila, 542 U.S. 200 (2004); Pilot Life Ins. Co. v. Dedeaux, 481
22
    U.S. 41 (1987).  ERISA regulates employee welfare benefit plans
23
    ("welfare plans") that "through purchase of insurance or otherwise,
24

25       [13]   Another issue not briefed by either party is whether the
    court should abstain or stay the case pending plaintiffs' claim to
26  the State Controller.

1  provide medical, surgical, or hospital care, or benefits in the

2  event of sickness, accident, disability, or death". Id. (quoting

3  29 U.S.C. § 1002(1) (internal quotations omitted)).  ERISA applies

4  to all employee benefit plans established or maintained by an

5  employer engaged in, or affecting, commerce.   29 U.S.C. §

6  1003(a)(1).  An employee benefit plan is defined as "an employee

7  welfare benefit plan or an employee pension benefit plan or a plan

8  which is both...." 29 U.S.C. § 1002(3).   In the case at bar,

9  neither party disputes that the two annuity contracts are governed

10  by ERISA.

11      ERISA's civil action enforcement provision allows a cause of

12  action for benefits due under terms of an employee benefit plan.

13  See 29 U.S.C. § 1132(a)(3).  As the Supreme Court has explained,

14  "the civil enforcement provisions of ERISA § 502(a) [are] the

15  exclusive vehicle for actions by ERISA-plan participants and

16  beneficiaries  asserting improper processing of a claim for

17  benefits...."   Pilot Life Ins. Co., 481 U.S. at 52.   See also

18  Corder v. Howard Johnson & Co., 53 F.3d 225, 231 (9th Cir. 1994)

19  ("The overriding purpose of ERISA is to provide relief to

20  beneficiaries with legitimate claims.")

21      Although not stated in their complaint, plaintiffs state in

22  their opposition that they bring suit pursuant to ERISA § 502

23  (a)(3), 29 U.S.C. § 1132(a)(3).   This section allows a plan

24  participant, beneficiary, or fiduciary "(A) to enjoin any act or

25  practice which violates any provision of this subchapter or the

26  terms of the plan, or (B) to obtain other appropriate equitable

1  relief (I) to redress such violations or (ii) to enforce any

2  provisions of this subchapter or the terms of the plan." 29 U.S.C.

3  § 1132(a)(1)(3)."   ERISA § 502 (a)(3), 29 U.S.C. § 1132(a)(3).

4      **b. Plaintiffs' First Cause of Action**

5      Without making any reference to ERISA, plaintiffs assert that

6  they are successors to the Valley Trust and thus are entitled to

7  the demutualization shares.  Compl. ¶ 24. The complaint states:

8  "Defendant Prudential has in its possession excess assets and fails

9  and refuses to apply them to benefit plan participants for

10 distribution by plaintiff trustees.  Defendant Prudential has

11 therefore breached the terms of the annuity and service agreements,

12 the plan of demutualization and the applicable Trust agreements."

13 Compl. ¶ 25.

14     Plaintiffs maintain that they are bringing suit pursuant to

15 502(a)(3) and yet fail to explain how this section of ERISA

16 supports, or even relates, to their claim.  The only instance in

17 which plaintiffs apply 502(a)(3) to the facts of their cases is in

18 stating: "This is because 502(a)(3) itself imposes certain duties,

19 and therefore liability under that provision does not the pan [sic]

20 on whether he races [sic] substantive provisions impose a specific

21 duty on the party being sued."  Pls.' Opp'n at 20:8-11.  This

22 sentence is incomprehensible.

23     "A plaintiff who brings a claim for benefits under ERISA must

24 identify a specific plan term that confers the benefit in

25 question."  Stewart v. National Educ. Ass'n, 404 F. Supp. 2d 122,

26 130 (D.D.C. 2005) aff'd Stewart v. National Educ. Ass'n, 471 F.3d

1  169 (D.C. Cir. 2006).  Indeed, "The Court may . . . dismiss an
2  action if the plaintiff is not entitled to a benefit they seek
3  under the ERISA-regulated plan."   Id.

4      In the case at bar, plaintiffs appear to argue that the
5  demutualization shares constitute assets under the annuities
6  contracts.  See Compl. ¶ 10.  However, plaintiffs' complaint fails
7  to set forth facts which establish that one, demutualization shares
8  are a type of benefit covered by ERISA, and two, that even if they
9  were, plaintiffs are entitled to these assets.

10     ERISA specifies some benefits that automatically fall under
11 ERISA regulations, such as medical, disability, and death benefits,
12 but demutualization consideration is not included in this category.
13 See 29 U.S.C. § 1002(1).  Both the D.C. Circuit and the Sixth
14 Circuit suggest that proceeds from demutualization are not part of
15 a typical benefit plan which is governed by ERISA.  In Stewart v.
16 National Educ. Ass'n, the D.C. Circuit affirmed the district
17 court's finding that plaintiff's complaint failed to state an ERISA
18 claim for denial of benefits based on an entitlement to
19 demutualization consideration.  Stewart v. National Educ. Ass'n,
20 471 F.3d 169.

21     The plaintiff in Stewart argued that demutualization shares
22 constituted a benefit pursuant to his benefits plan.  In rejecting
23 this argument, the district court specifically explained that the
24 contractual language of the benefits plan controls whether or not
25 demutualization considerations are benefits under ERISA.  The
26 benefits plan at issue in Stewart defined "benefit" so as to

1   include ". . . any amount . . .payable to a participant or

2   beneficiary in the event of death . . .or other occurrence

3   affecting the participant. . . in accordance with the terms of any

4   insurance policy. . . and this Plan." Stewart, 404 F. Supp. 2d at

5   131.   The plaintiff contended that demutualization was an

6   "occurrence" and therefore should be considered a benefit.   The

7   district court rejected this argument.   In affirming the district

8   court's dismissal, the Circuit explained:

9           Here, the [demutualization proceeds are] ... so obviously
            different in kind from the other personal events listed
10          in the definition-death, accident, sickness, and
            disability-that it cannot be considered an "occurrence"
11          leading to a "benefit" under the terms of the Plan.
            Although the district court's limitation may well be too
12          narrow (as some people sensibly insure against the
            nonphysical occurrence of unexpected unemployment), it
13          was correct to recognize that demutualization is simply
            different. . . . Notwithstanding Stewart's appeal to his
14          inherent rights to mutual insurance company surplus, he
            cannot escape the plain language in the Plan Document and
15          Group Contract that shows that he has not stated a claim
            for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) by
16          alleging that he was deprived of the demutualization
            proceeds.
17

18  Stewart, 471 F.3d at 175.

19       Like the plaintiff in Stewart, plaintiffs in the case at bar

20  fail to explain where in the annuities contracts there is any

21  mention of demutualization or any other language which would

22  support an award of demutualization proceeds.   The logic of the

23  D.C. Circuit applies with equal force here:   although plaintiffs

24  may not have a claim to demutualization shares as a "benefit" under

25  the annuity contracts, there is nothing preventing plaintiffs from

26  asserting their right to shares pursuant to the demutualization

18

1  plan.   However, claiming that the demutualization plan entitles

2  plaintiffs to demutualization proceeds would not constitute a claim

3  pursuant to ERISA.

4      The Sixth Circuit's decision in <u>Bank of New York v.  Janowick</u>,

5  is  instructive  with  respect  to  plaintiffs'  claims  under  the

6  demutualization plan.   There, the court found that,

7          In reality, rights to proceeds from a demutualization
           arise only when a mutual insurance company demutualizes,
8          and  in  such  a  situation,  the  mutual  company's
           demutualization plan defines those rights. With a proper
9          understanding of the right at issue, it is apparent that
           no right to the Prudential demutualization proceeds could
10         have  arisen  prior  to  December  2000,  when  Prudential
           announced its plan to demutualize.

11

12  <u>Bank of New York v. Janowick</u>, 470 F.3d 264, 274 (6th Cir. 2006).

13  <u>Bank of America</u>  was an interpleader suit and the decision turned

14  on who was the contract holder of the annuity agreements.   The

15  court, forced to choose between the employer (Southwire) and the

16  employees, concluded that the employees were the current contract

17  holders because they had a membership interest in the mutual

18  company, whereas Southwire was, at best, a successor to the

19  contract.   The court found it persuasive that the ownership

20  interest in the demutualization arose at a time when Southwire's

21  interest in the annuity contracts was defunct.   <u>See</u> <u>Bank of America</u>

22  470 F.3d at 274.

23      Here, plaintiffs appear to be akin to Southwire in <u>Bank of</u>

24  <u>America</u>.   In their complaint, plaintiffs allege that they were only

25  assigned the "rights" of the Valley Trust and became "successors"

26  to the Valley Trustees in 2006.   Compl. ¶ 19.   Prudential's

demutualization plan was created 2000 and it was at that point that the right to demutualization proceeds arose and that the demutualization shares were allocated to the named contract holders.

Moreover, and perhaps most importantly, as the Sixth Circuit suggests, "the mutual company's demutualization plan defines those rights." Id. at 274. In the case at bar, plaintiffs fail to set forth any allegations which would, if true, entitle them to the demutualization shares under the defendants' demutualization plan. Plaintiffs concede that they were not the named contract holders of the two annuities and did not become successors to the annuities until November 2006. Under the terms of the demutualization plan, the entire value of Prudential was to be allocated to "owners" of "eligible policies" (terms that are defined in the plan) in the form of cash, policy credits or common stock in a newly created holding company.

Defendants' demutualization plan defined "the Owner of . . . a group annuity contract . . . [as] the Person or Persons specified as the policyholder or contract holder in the master policy or contract, as reflected in the applicable Records" of Prudential as of December 15, 2000 (the "adoption date"). See Plan, §5.3. The demutualization plan further provided that "the identity of the Owner of a Policy shall be determined without giving effect to any interest of any other Person in such Policy." See Plan, §5.6.

In short, plaintiffs' present complaint fails to set forth allegations which would, if true, entitle them to relief.

1          **2.  The Relief Plaintiffs Seek is Legal, not Equitable**

2          Plaintiffs complaint seeks declaratory judgment that they are

3  a successor to the Valley Trust annuities and that therefore, they

4  are entitled to demutualization shares.  Compl.  ¶ 8.  Plaintiffs

5  also seek specific performance, "namely the demutualization shares

6  issued in 2002 to the Valley Trust be turned over to [plaintiffs]."

7  Id.  Finally, plaintiffs ask that the court impose a resulting

8  trust and constructive trust on the demutualization shares.  Id.

9  For the reasons discussed herein, the court concludes that

10  plaintiffs are seeking legal relief, which is not available under

11  ERISA.

12          **a.  What Constitutes "Equitable" Relief under ERISA**

13          ERISA authorizes beneficiaries to bring suit in federal court

14  for "appropriate equitable relief" to remedy violations of a plan

15  or to enforce its provisions.    § 502(a)(3)(B); 29 U.S.C. §

16  1132(a)(3)(B).[14]  In determining whether an action for equitable

17  relief is properly brought under ERISA, courts evaluate "the

18  'substance of the remedy sought. . .rather than the label placed

19  on that remedy.' " Providence Health Plan v. McDowell, 385 F.3d

20  1168, 1174 (9th Cir. 2004) (citations omitted).

21          Several key Supreme Court decisions set forth the scope of the

22  remedial  powers  conferred  on  district  courts  by  secion

---

23          [14]  Section 502(a)(3) provides that a beneficiary may bring

24  suit to  "(A) to enjoin any act or practice which violates any
   provision of this subchapter or the terms of the plan, or (B) to

25  obtain other appropriate equitable relief (i) to redress such
   violations or (ii) to enforce any provisions of this subchapter or

26  the terms of the plan." 29 U.S.C. § 1132(a)(3)

1  502(a)(3)(B).  In <u>Mertens v. Hewitt Associates</u>, the Court found
2  that "equitable relief" as used in ERISA only refers to the
3  traditional forms of equitable relief - injunction, mandamus, and
4  restitution - but not to compensatory damages.  508 U.S. 248, 256
5  (1993).  Money damages, the Court explained, are the classic form
6  of legal relief. <u>Id.</u> at 255.

7       In <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, the Court
8  again clarified the meaning of equitable relief.  In <u>Great-West</u>,
9  an insurer sought to enforce the reimbursement provision of an
10  ERISA plan against a plan participant by means of the equitable
11  enforcement mechanisms of § 1132(a)(3).  534 U.S. 204 (2002).  In
12  rejecting plaintiff's attempt to use injunctive relief as an
13  equitable means to secure a monetary award, the Court explained
14  that "[a]lmost invariably. . . suits seeking (whether by judgment,
15  injunction, or declaration) to compel the defendant to pay a sum
16  of money to the plaintiff are suits for 'money damages' . . . since
17  they seek no more than compensation for loss resulting from the
18  defendant's breach of legal duty." <u>Id.</u> at 210 (quoting <u>Bowen v.</u>
19  <u>Massachusetts</u>, 487 U.S. 879, 918-19 (1988)).  As the <u>Great-West</u>
20  Court explained,

21       Petitioners seek, in essence, to impose personal
         liability on respondents for a contractual obligation to
22       pay money-relief that was not typically available in
         equity. "A claim for money due and owing under a contract
23       is 'quintessentially an action at law.' " <u>Wal-Mart</u>
         <u>Stores, Inc. v. Wells</u>, 213 F.3d 398, 401 (7th Cir. 2000)
24       (Posner, J.).

25  <u>Great-West</u>, 534 U.S. at 210.  The Court's holding was premised on
26  the fact that the "funds to which petitioners claim an entitlement

under the Plan's reimbursement provision . . .are not in respondents' possession." Id. at 214.  Accordingly,

> the basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable-the imposition of a constructive trust or equitable lien on particular property-but legal-the imposition of personal liability for the benefits that they conferred upon respondents.

Great-West, 534 U.S. at 214.  Moreover, the Court distinguished between equitable claims that seek to prevent future losses, which are permissible under ERISA, and those that seek past due sums, which are not.  See id. at 211-12.

In Sereboff v. Mid Atlantic Medical Services Inc., the Supreme Court expanded the definition of what constitutes equitable relief. Distinguishing Great-West, the Court held that where defendants hold the funds in a specifically identified fund, an action to impose a constructive trust or equitable lien constitutes "equitable relief" within the meaning of 502(a)(3). 126 S. Ct. 1869, 1874 (2006).  In Great-West, by contrast, the funds were dissipated and not within the possession of the defendants. Plaintiffs read Sereboff incorrectly; it explicitly did not overrule Great-West, rather, the Sereboff decision distinguished Great-West and clarified the meaning of equitable relief.

**b.   Plaintiffs' Claim**

In the case at bar, the funds plaintiffs request (at least some of them) have been escheated to the State of California and

23

1    are no longer in the control of defendants.  In this way,

2    plaintiffs are more akin to the claimants in <u>Great-West</u> than in

3    <u>Sereboff</u>.  Plaintiffs here seek funds which defendants do not

4    possess.  The relief plaintiffs seek would necessarily entail

5    holding defendants personally liable not only for the escheated

6    funds, but for any increase in value of the Prudential stock.  This

7    is the very type of liability which <u>Great-West</u> defines as legal and

8    unavailable under ERISA.

9         Moreover, when evaluating "the 'substance of the remedy sought

10   . . . rather than the label placed on that remedy' " <u>Providence</u>

11   <u>Health Plan</u>, 385 F.3d at 1174, it is clear that plaintiffs seek

12   reimbursement of the demutualization shares. Plaintiffs' complaint

13   alleges that defendants breached the terms of the annuities

14   contracts and the demutualization plan and that plaintiffs are

15   entitled to the proceeds from the demutualization.  As in <u>Great-</u>

16   <u>West</u>, plaintiffs here seek "to impose personal liability on

17   [defendants] for a contractual obligation to pay money-relief that

18   was not typically available in equity." <u>Great-West</u>, at 210.  <u>See</u>

19   <u>also</u> <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 918-919 (1988) ("almost

20   invariably . . . suits seeking (whether by judgment, injunction,

21   or declaration) to compel the defendant to pay a sum of money to

22   the plaintiff are suits for 'money damages,' as that phrase has

23   traditionally been applied, since they seek no more than

24   compensation for loss resulting from the defendant's breach of

25   legal duty.")

26        In sum, plaintiffs fail to state a claim under ERISA for two

                                    24

1  reasons.  First, plaintiffs fail to set forth allegations which

2  would, if true, entitle them to the demutualization proceeds

3  pursuant to ERISA.  Second, plaintiffs seek legal relief and the

4  applicable section of ERISA only provides for equitable relief.

5  Accordingly, the claim must be dismissed.[15]

6      The court will, however, grant plaintiffs leave to amend.

7  Federal Rule of Civil Procedure 15 provides that "leave to amend

8  shall be freely given when justice so requires." Fed. R. Civ. P.

9  15(a). Absent prejudice, or a "strong showing" of the other

10 factors, such as undue delay, bad faith, or dilatory motive, "there

11 exists a presumption under Rule 15(a) in favor of granting leave

12 to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,

13 1052 (9th Cir. 2003) (per curiam).  Generally, leave to amend is

14 only denied when it is clear that the deficiencies of the complaint

15 cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc.,

16 957 F.2d 655, 658 (9th Cir. 1992).

17     Although plaintiffs' complaint is riddled with problems, the

18 court cannot say that plaintiffs cannot amend their complaint to

19 cure the deficiencies identified in this order.  Accordingly, the

20 prejudice to defendants is minimal.  Perhaps most importantly,

21

22      [15]    The court may still exercise jurisdiction over
plaintiffs' state law claim pursuant to 28 U.S.C. § 1332. However,
23 the state law claim suffers from the same flaws as the ERISA claim.
Namely, plaintiffs fail to set forth factual allegations that they
24 are entitled to demutualization proceeds under the demutualization
plan.  Moreover, were plaintiffs to amend their complaint and state
25 a cause of action under ERISA, it is likely that the state law
claim would be preempted by ERISA.

26

1  plaintiffs claim that they did not know of the escheatment prior

2  to filing their complaint.  The court assumes, but does not know,

3  that plaintiffs may want to amend their complaint with this new

4  fact in mind.

5      With respect to the escheated funds and the UPL, the court

6  concludes that since plaintiffs have failed to state a claim under

7  ERSIA, the issue of ERISA preemption of the UPL is moot.  In other

8  words,  since  the  court  has  concluded  that  as  plead,  the

9  demutualization proceeds are not a "benefit" covered by ERISA, and

10  therefore, there is no reason that, in this situation, the UPL

11  would be preempted by ERISA.

12                               **V.**

13                         **CONCLUSION**

14  1.   Defendants' Motion to Dismiss is GRANTED without prejudice.

15  2.   Plaintiffs' are hereby granted leave to file an amended

16       complaint within 10 days of this order.

17       IT IS SO ORDERED.

18       DATED: April 3, 2007.

19

20

21       LAWRENCE K. KARLTON
         SENIOR JUDGE
22       UNITED STATES DISTRICT COURT

23

24

25

26