1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT

8                                    EASTERN DISTRICT OF CALIFORNIA

9

A.C. STEELMAN, FRAN
10  MCDERMOTT, TRUSTEES OF
    THE SACRAMENTO AREA
11  ELECTRICAL WORKERS' PENSION
    TRUST FUND, as successor to
12  and as TRUSTEES on behalf
    of SACRAMENTO VALLEY
13  ELECTRICAL WORKERS' PENSION
    TRUST,
14
            Plaintiff,
15                                                    NO. CIV. S-06-2746 LKK/GGH
         v.
16
    PRUDENTIAL INSURANCE
17  COMPANY OF AMERICA,
    PRUDENTIAL FINANCIAL, INC.,                       O R D E R
18
            Defendants.
19  _____/

20       Plaintiffs, trustees of the Sacramento Area Electrical Workers

21  Pension  Trust  Fund  ("Area  Trust")  and  the  Sacramento  Valley

22  Electrical  Workers  Pension  Trust  ("Valley  Trust"),  bring  suit

23  against  Prudential  Insurance  Company  of  America,  a  New  Jersey

24  Company,  ("defendant")  pursuant  to  the  Employee  Retirement  Income

25  Security  Act  (ERISA),  29  U.S.C.  §§  1132 ,  1140  and,  in  the

26  alternative,  pursuant  to  28  U.S.C.  §  1332.  Plaintiffs' complaint

alleges that defendant violated the terms of the service and annuity agreements when it failed to provide plaintiffs with demutualization shares.  Pending before the court is defendant's motion to dismiss plaintiffs' second amended complaint for failure to state a claim.[1]

## I.

## FACTS & PROCEDURAL HISTORY

**A.   Factual Allegations**

The factual allegations as set forth in plaintiffs' second amended complaint are almost as obscure as the factual allegations in the first amended complaint.  What follows is the court's best attempt at deciphering the relevant facts and claims.[2]

**1.   The Group Annuity Contracts**

At issue in this case are two annuity contracts issued by Prudential.  In 1982, the trustees of the Sacramento Valley Electrical Workers Pension Trust ("The Valley Trust") terminated the existing defined benefit pension plan and all assets were liquidated.  Second Amended Complaint ("SAC") ¶ 9.  Soon thereafter, the trustees purchased two annuities from Prudential,

---

[1] The court wishes to be candid.  Both the difficulties with the statute and the occasional obscurity of the pled facts has made resolution of the instant motion less than certain.

[2]  The court is uncertain as to whether the problem is with the facts or the plaintiffs' description of them.  Moreover, the court notes that plaintiffs' brief in opposition to defendant's motion makes factual allegations, which, if stated in the complaint, might well state a cause of action. Unfortunately, they are not alleged in the complaint

1  "to be owned by the Valley Trust as contract holder to provide

2  accrued pension benefits to participants of the Valley Trust

3  pension plan." SAC ¶ 9.  The parties appear to agree that the two

4  annuities are employee benefit pension plans governed by the

5  Employee Retirement Income Security Act (ERISA).

6       The complaint goes on to allege that, "plaintiff Valley Trust

7  thereafter was inactive, some Trustees having died or resigned,

8  leaving a partial Board of Trustees.  It owned as its only asset

9  the group annuity contracts..."  <u>Id.</u> ¶ 10.[3]

10      When the Valley Trustees purchased the annuity contracts, they

11  named themselves, "Board of Trustees of Sacramento Valley

12  Electrical Workers' Pension Plan," as the contract holders.  <u>See</u>

13  GA-8811, GA-8812, Verpent Decl. to Def.'s First Mot. to Dismiss,

14  Exhs. 1, 2.[4]

15      Both annuity contracts provide for their continued operation

16  when the contract holder is defunct and no successor has been

17  appointed.  Section 2.3 of GA-8811 provides that if the contract

18  _____

19      [3]  It is unclear what plaintiffs mean by inactive.  Whatever

20  else is true, it seems clear that under the pleadings the trust was
    not dissolved.

21      [4] GA-8811 and GA-8812 are the annuities that are the basis for

22  the claims.  Because the complaint makes reference to both annuity
    contracts, the court may consider the content of these contracts

23  in deciding the pending motion to dismiss.  "Even if a document is
    not attached to a complaint, it may be incorporated by reference

24  into a complaint if the plaintiff refers extensively to the
    document or the document forms the basis of the plaintiff's claim."

25  <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  The
    "district court may treat such a document as part of the complaint,

26  and thus may assume that its contents are true for purposes of a
    motion to dismiss under Rule 12(b)(6)."  <u>Id.</u>

1   holder notifies "Prudential that it no longer exists or will not

2   act as Contract Holder under this contract and no successor

3   Contract Holder is appointed, this contract will continue." <u>See id.</u>

4   Section 1.10 of GA-8812 contains a parallel provision. <u>Id.</u>[5]

5   Plaintiffs assert that from 1982 on, Prudential provided annuitant

6   information to the Valley Trust, "directed annuitants to the Valley

7   Trust to obtain pension information, and obtained information from

8   the Valley Trust in order to properly administer the group

9   contracts." SAC ¶ 15.[6]

10      The complaint does not make clear when the present plaintiffs

11  entered the picture, and the extent to which plaintiffs are in fact

12  the trustees of the Valley Trust.  In the first amended complaint,

13  plaintiffs asserted that on November 15, 2006 they were appointed

14  as "successor trustees of the Valley Trust with all rights and

15  powers of the Valley Trustees."  First Amended Complaint ("FAC")

16  ¶ 19.  It was at this time that plaintiffs apparently were assigned

17  the "rights" of the Valley Trust and became "successors" to the

18  Valley Trustees.  <u>Id.</u>[7]

19  ────────────────

20      [5]  As best as can be determined from the pleadings, despite
    the allegation that the Valley Trust went inactive, the events
21  contemplated by the language of the policies never occurred.

22      [6] This is an apparent departure from the facts set forth in
    the first amended complaint, in which plaintiffs allege that
23  Prudential communicated to the Valley Trust in the care of the AREA
    Trust.   First Amended Complaint ("FAC") ¶ 14.

24      [7] This factual allegation may be significant.  As discussed
    later in this order, defendant's demutualization plan specified
25  that the demutualization proceeds would be allocated to plan
    "owners."  Owners were defined as the person or persons specified
26  as the policyholder or contract holder as of the date of

4

1    In the second amended complaint, plaintiffs make no allegation
2  about when they were appointed as successors to the Valley Trust,
3  instead, plaintiffs state that "since on or before the filing of
4  this lawsuit, they are trustees of the [Valley Trust] for purposes
5  of this litigation." SAC ¶ 2.  Unlike the first amended complaint,
6  there are no other factual allegations as to when plaintiffs were
7  assigned the rights of the Valley Trust and became successors to
8  the trustees.[8]

9    The complaint also states that "[t]he only entity ever named
10 in the group contracts described herein, GA-881 and GA-8812, and
11 reflected in the applicable records of Prudential on or before 2001
12 is plaintiff Valley Trust."  Id. ¶ 14.[9]

13    **2.  Prudential's Demutualization**

14    In 2000, Prudential adopted a plan to demutualize, that is,
15 to reorganize from a mutual life insurance company to a stock life
16 insurance company.  The demutualization plan was approved by the
17 New  Jersey  Insurance  Commissioner.   As  a  result  of  the
18 ────────────────────────
   demutualization, December 15, 2000.  If plaintiffs were not
19 successors or named contract holders until November of 2006, it may
   be that they were not the contract holders at the time of
20 demutualization.  On the other hand, if they are proper successors
   to the holders of title this may not be a problem. Whatever rights
21 they may have to the proceeds of demutualization, they might still
   have the right to assert a wrongful conversion of those proceeds.
22
       [8]   Whether the allegations contained in the first complaint
23 were accurate is, of course, beyond the ability of the court to
   determine in resolving the instant motion.
24
       [9]   This allegation suggests entity rights independent of who
25 properly represents that entity. It is the latter question,
   however, which apparently gave rise to the events underlying this
26 lawsuit.

1  demutualization, the entire value of Prudential was allocated among

2  Prudential's eligible policy holders in accordance with terms set

3  out in the demutualization plan.

4      The demutualization plan provided that the entire value of

5  Prudential would be allocated to "owners" of "eligible policies"

6  in the form of cash, policy credits or common stock in a newly

7  created holding company.  See Demutualization Plan, Def.'s Request

8  for Judicial Notice, Ex. 1 to Def.'s First Motion to Dismiss.[10]

9  The demutualization plan also stated that demutualization "will not

10  adversely change existing contractual provisions as to premiums,

11  policy benefits, dividend eligibility, values, guarantees or other

12  current policy obligations of [Prudential] to its Policyholders."

13  See Plan, Art. II.[11]

14      The demutualization plan defined "the Owner of . . . a group

15  annuity contract . . . [as] the Person or Persons specified as the

16  policyholder or contract holder in the master policy or contract,

17  as reflected in the applicable Records" of Prudential as of

18  December 15, 2000.  See Plan, § 5.3.  The plan further provided

19  that "the identity of the Owner of a Policy shall be determined

20  without giving effect to any interest of any other Person in such

21  Policy."  See Plan, § 5.6.  Finally, the demutualization plan

22

23      [10]  Because plaintiffs' complaint makes direct reference to
   the demutualization plan, the court finds it proper to take
24  judicial notice of the plan.

25      [11]  Thus the instant lawsuit does not address questions of
   rights under the annuities, but rather is limited to the proceeds
26  of the demutualization.

1  provides that should a contract holder not be located, the

2  demutualization proceeds would be paid in cash and escheated to the

3  state where the contract was issued.  See Plan, § 8.1(f).

4       Plaintiffs aver that in June of 2001, Prudential "sent the

5  Board of Trustees of the Valley Trust a letter identifying it as

6  the eligible contract holder."  SAC ¶ 16.  Then, in 2003,

7  Prudential "sent the Valley Trust a dividend from the stock created

8  by the demutualization."  Id.  The complaint is silent as to the

9  amount of the dividends or what happened to the dividends.  As the

10  complaint reads now, it appears that the Valley Trust did receive

11  a check for the proceeds from demutualization.[12]

12       Prudential, in its motion to dismiss, avers that Valley Trust

13  was defunct and that therefore, Prudential did not know the correct

14  identity of the contract holder for the two annuities.[13]

15       Plaintiffs allege that on or about June 1, 2006, "the Area

16  Trust became aware of the nature of the demutualization

17  consideration as shares issued to the Valley Trust and that the

18

19       [12]   In the first amended complaint, plaintiffs allege that on
    September 1, 2003 a dividend check in the amount of $27,000.00 was
20  issued to the Valley Trust and sent in care of the Area Trust.  FAC
    ¶ 16.   Shortly thereafter, Prudential demanded return of the
21  proceeds denying "that either [sic] the Area Trust nor the Valley
    Trust was entitled to the dividend check or the underlaying shares
22  of stock under the plan of reorganization. . . Under protest, Area
    Trust returned the proceeds. . ."  Id.  These factual allegations
23  are not contained in the second amended complaint.

24       [13]   The assertion made by the defendant is a factual
    assertion which directly contradicts plaintiffs' assertion that
25  despite its inactivity, the Valley Trust continued to exist and
    that the defendant continued to deal with the Valley Trust.  Of
26  course on a motion to dismiss, the court must assume the truth of
    the allegations in the complaint.

1   value of the consideration exceeded $1,000,000.00 and made demand
2   therefore as successor to the Valley Trust and on behalf of the
3   Valley Trust as original contract holder." SAC ¶ 22.  "Prudential
4   has refused to recognize either the Valley Trust or Area trust as
5   the Contract-holder, successor, or alternate funding agency and
6   refuses to deliver up the demutualization consideration, 71,000
7   shares of PRU stock."  Id.

8        Plaintiffs also allege that in October 2006, defendant
9   escheated $2,151,429.12 to the State of California Controller.
10  Plaintiffs aver that "the amount escheated did not reflect the
11  value of Prudential shares assigned to the group contracts but a
12  much lesser value nor did it include interest or accrued dividends
13  from 2001."  SAC ¶ 24.

14  **B.   New Claims Contained in the Second Amended Complaint**

15       Plaintiffs assert three causes of action in their second
16  amended complaint.  The first claim is entitled "ERISA breach of
17  Fiduciary Duty, ERISA § 409" and alleges that, "under the terms of
18  the group annuities, applicable trust agreements, demutualization
19  plan and applicable law, plaintiff trusts are entitled to the
20  demutualization process/consideration as the contract holders of
21  GA-8811 and GA-8812 on the date of demutualization." SAC ¶ 28.
22  Plaintiffs aver that defendant breached the terms of these
23  agreements. Id. ¶ 32. Plaintiffs seek "damages against defendants
24  for fiduciary breach in the amount of 1) the value of 71,000 shares
25  of PRU stock at current market; 2) the value of the accrued
26  dividends since 2001 on said stock."  SAC at 11:14-16.

1       The second cause of action is entitled, "ERISA breach of

2  contract – Equitable Relief."   Plaintiffs aver that the Valley

3  Trust and defendant had a contractual relationship regulated by the

4  terms of the demutualization plan, group annuity contract, and

5  Trust agreement. "Said contract requires that defendant distribute

6  certain demutualization consideration to the Valley Trust, its

7  successor, or an alterative funding agency for the benefit of the

8  plan participants, or to the plan participants."   SAC ¶ 35.

9  Plaintiffs claim that the amount escheated to the State of

10  California Controller constituted a breach of the contractual

11  documents. Among other things, plaintiffs allege that the amount

12  escheated was only a portion of the proceeds owed to plaintiffs,

13  which is valued in excess of six million dollars. See SAC ¶ 38.

14       With respect to the second claim, plaintiffs seek "an

15  injunction ordering defendants to recognize plaintiff Valley Trust

16  as the contract-holder, including imposition of an equitable lien,

17  constructive trust, order of specific performance or reparation as

18  to 71,000 shares of PRU stock . . ." SAC at 11:17-21.

19       The third and final cause of action is entitled, "Diversity

20  State Claim, Breach of Contract, Equitable Relief/Money Damages."

21  This claim is identical in substance to plaintiffs' claim for

22  breach of contract under ERISA. Plaintiffs seek "injunctive relief

23  or an order of specific performance." SAC at 11:22-23.

24  **C.   The Court's April 3, 2007 Order Dismissing Plaintiff's First
         Amended Complaint**

25

26       On April 3, 2007 the court dismissed plaintiffs' first amended

1  complaint.  The court concluded that plaintiffs' complaint failed

2  to allege a claim under ERISA.   See April 3, 2007 Order at 16.

3  Specifically, the court found that plaintiffs failed to allege

4  facts, which if true, established that one, demutualization shares

5  are a type of plan benefit covered by  section 502(a)(1) of ERISA,

6  and two, even if they were, that plaintiffs were entitled to the

7  assets.  The court also dismissed the ERISA claims on the grounds

8  that plaintiffs sought legal relief, which is not available under

9  ERISA.   See id. at  21.   Finally,  the  court  noted  that  if

10 jurisdiction  were  not  predicated  on  ERISA,  jurisdiction  for

11 plaintiffs' state law claims might be exercised pursuant to 28

12 U.S.C. § 1332. See id. at 25 n. 15.

13                              **II.**

14    **STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

15        In order to survive a motion to dismiss for failure to state

16 a claim, plaintiffs must allege "enough facts to state a claim to

17 relief that is plausible on its face."  Bell Atlantic Corp. v.

18 Twombly, 127 S.Ct. 1955, 1974 (2007).  While a complaint need not

19 plead "detailed factual allegations," the factual allegations it

20 does include "must be enough to raise a right to relief above the

21 speculative level." Id. at 1964-65.

22    As the Supreme Court observed, Federal Rule of Civil Procedure

23 8(a)(2) requires a "showing" that the plaintiff  is entitled to

24 relief, "rather than a blanket assertion" of entitlement to relief.

25 Id. at 1965 n. 3.  Though such assertions may provide a defendant

26 with the requisite "fair notice" of the nature of a plaintiff's

1  claim, only factual allegations can clarify the "grounds" on which

2  that claim rests. Id.  "The pleading must contain something more.

3  . .than. . . a statement of facts that merely creates a suspicion

4  [of] a legally cognizable right of action." Id. at 1965, quoting

5  5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216,

6  pp. 235-36 (3d ed. 2004).[14]

7      On a motion to dismiss, the allegations of the complaint must

8  be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

9  The court is bound to give the plaintiff the benefit of every

10  reasonable inference to be drawn from the "well-pleaded"

11  allegations of the complaint.  See Retail Clerks Intern. Ass'n,

12  Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

13  In general, the complaint is construed favorably to the pleader.

14  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

15  grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  That said,

16  the court does not accept as true unreasonable inferences or

17  conclusory legal allegations cast in the form of factual

18  allegations.  Western Mining Council v. Watt, 643 F.2d 618, 624

19  (9th Cir. 1981).

20  ////

21  ////

22  ////

23  ─────────────────

24      [14]  The holding in Twombly explicitly abrogates the well
   established holding in Conley v. Gibson, that, "a complaint should
25  not be dismissed for failure to state a claim unless it appears
   beyond doubt that the plaintiff can prove no set of facts in
   support of his claim which would entitle him to relief." 355 U.S.
26  41, 45-46 (1957); Twombly, 127 S.Ct. at 1968.

**III.**

**ANALYSIS**

**A.  Plaintiffs' ERISA Claims**

Plaintiffs bring suit pursuit to sections 502(a)(2) and 502(a)(3) of ERISA.[15]  While plaintiffs may be able to state a cause of action pursuant to ERISA,[16] the second amended complaint fails to allege facts sufficient to state a claim.

**1.   Plaintiffs' Claim Pursuant to Section 502(a)(3)**

Section 502(a)(3) of ERISA allows a "plan participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(1)(3).

Before addressing plaintiffs' complaint, it is important to note the difference between plan benefits and plan assets. Under ERISA Section 502(a)(1), plaintiffs may sue for benefits

---

[15]  Although the complaint indirectly mentions section 502(a)(2), which provides for suits against fiduciaries, the second amended complaint does not mention section 502(a)(3).   Only in their opposition brief do plaintiffs clarify that their breach of contract claim is premised on section 502(a)(3).

[16]   While it may appear that this conclusion is a departure from the court's previous order, it is not.   In the first amended complaint, plaintiffs appeared to be stating a claim pursuant to section 502(a)(1).   For the reasons explained in the court's April 3, 2007 Order, plaintiffs could not state a claim under that section.   However, in the second amended complaint, plaintiffs appear to seek relief pursuant to subsections that, for the reasons explained herein, could allow for a cause of action.

due under the term of a plan.   29 U.S.C. § 1132(a)(1).[17]   As

discussed in the court's previous order, it is far from clear

that demutualization proceeds are "benefits" due under a plan.

See Order issued April 3, 2007 at 17.   Under Section 502(a)(3),

however, there is no restriction limiting plaintiffs to suit for

"benefits due."   The only limiting term in section 502(a)(3) is

that the suit must be for violations of "this subchapter or the

terms of the plan." 29 U.S.C.A. § 1132 (a)(3).   Accordingly, to

the extent that plaintiffs allege that defendant's actions with

respect to the demutualization proceeds violated either the plan

or ERISA, a claim may be stated.   Put directly, under section

502(a)(3), it is not necessary that demutualization proceeds are

"benefits" in order to state a claim for relief.

     Nonetheless, for the reasons discussed below, plaintiffs'

second amended complaint must be dismissed.

###      a.   Whether plaintiffs are plan participants, beneficiaries, or fiduciaries.

     Under 502(a)(3), only plan participants, beneficiaries or

fiduciaries may bring suit.   One of the plaintiffs (A.C.

Steelman) is a plan participant, and accordingly, he has

standing to sue.   The relationship of the other plaintiffs to

-------

[17]   Section 502(a)(1) provides in pertinent part:

A civil action may be brought by a participant or beneficiary
. . . (B) to recover benefits due to him under the terms of
his plan, to enforce his rights under the terms of the plan,
or to clarify his rights to future benefits under the terms
of the plan . . .

29 U.S.C.A. § 1132

13

1  the Valley Trust annuity contracts is unclear.  For example, the

2  complaint states that plaintiffs are the Trustees of the Area

3  Trust Fund, and additionally that, "since on or before the

4  filing of this lawsuit, they are trustees of the Sacramento

5  Valley Electrical Workers Pension Trust for purposes of this

6  litigation."  SAC ¶ 2. It is not clear whether the plaintiffs

7  are alleging that they are both trustees of the Area Trust funds

8  and the pension fund, or exactly what their status is.  Later,

9  the complaint states that plaintiffs are the Valley Trust but

10  that it was inactive, see SAC ¶ 10 ("Plaintiff Valley Trust

11  thereafter was inactive...").

12      Simply stated, the complaint fails to allege that

13  plaintiffs were or are beneficiaries, participants or

14  fiduciaries of the annuity contracts at issue.[18]  Plaintiffs'

15  opposition brief states, "clearly, plaintiffs are fiduciaries

16  under 502(a)(3)." Pls.' Opp'n at 16.  But how they acquired that

17  status is simply not alleged in any meaningful way.  Given the

18  confusion about the relevant history of plaintiffs relationship

19  to the plan, more is required.

20      ERISA defines a fiduciary as:

21      a person is a fiduciary with respect to a plan to the
        extent (i) he exercises any discretionary authority or
22      discretionary control respecting management of such plan or
        exercises any authority or control respecting management or
23      disposition of its assets, (ii) he renders investment

24  ─────────────

25      [18] While it could be argued that allegations of status plead
    legal rather than factual matters, here, where the statute
26  apparently requires a particular status, the plaintiff should, at
    a minimum, allege they meet the requirement.

> advice for a fee or other compensation, direct or indirect,
> with respect to any moneys or other property of such plan,
> or has any authority or responsibility to do so, or (iii)
> he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C.A. § 1002. See also Louisiana Bricklayers & Trowel

Trades Pension Fund & Welfare Fund v. Alfred Miller General

Masonry Contracting Co., 157 F.3d 404, 406 (5th Cir.

1998)(finding that "as fiduciaries, the trustees of a

multiemployer benefit plan may maintain a cause of action under

section 502(a)(3) of ERISA.").

In the instant case, the second amended complaint is silent

as to how, if at all, plaintiffs acted as fiduciaries.  For

example, there are no allegations that plaintiffs exercised any

discretionary control or authority over the plan, or rendered

investment advice.  While plaintiffs may well be fiduciaries,

the complaint does not allege as much.  According, with respect

to plaintiffs Stinson, Story, McDermoot and Baker, the ERISA

claims are dismissed with leave to amend.

> **b.   Complaint fails to allege how defendant "violated
>        any provision of [ERISA] or the terms of the
>        plan."**

Plaintiffs fail to sufficiently allege that defendant

violated either the "terms of the plan" or "provision of ERISA."

Rather than identify a certain plan term or provision of ERISA,

the second amended complaint simply states that "demutualization

proceeds are plan assets as described in ERISA."  SAC ¶ 25.

Without citing to a specific plan term or ERISA provision,

15

1  plaintiffs assert that defendant wrongfully withheld 71,000

2  shares of Prudential stock.

3       As currently worded, the complaint fails to sufficiently

4  allege how defendant's actions violated a plan term or ERISA.

5  As the Supreme Court recently observed, Federal Rule of Civil

6  Procedure 8(a)(2) requires a "showing" that plaintiffs are

7  entitled to relief, "rather than a blanket assertion" of

8  entitlement to relief.  Bell Atlantic Corp. v. Twombly, 127

9  S.Ct. 1955, 1965 n. 3 (2007).  The "pleading must contain

10 something more. . .than. . .a statement of facts that merely

11 creates a suspicion [of] a legally cognizable right of action."

12 Id. at 1965.

13      Here, plaintiffs create a suspicion of a legally cognizable

14 claim (namely, that they are entitled to six million dollars in

15 demutualization proceeds), but the complaint must contain more

16 in order to survive a motion to dismiss.  The factual

17 allegations "must be enough to raise a right to relief above the

18 speculative level." Id. at 1964-65.

19      Because there is a suspicion of a cognizable claim, the

20 court will allow plaintiffs leave to file an amended complaint.

21 Plaintiffs may be able to state a claim that demutualization

22 proceeds are plan assets, and as such, defendant violated a

23 provision of ERISA by not giving plaintiffs those assets.  As

24 previously noted, while demutualization proceeds may not be

25 benefits of the pension plans, they are assets of the plan.

26      ERISA does not specifically define the meaning of a plan

16

asset.  See Bannistor v. Ullman, 287 F.3d 394, 402 (5th Cir.

2002).  That said, common sense, to the degree common sense has

anything to do with ERISA, suggests that such proceeds are

assets of the plan.  Moreover, the Department of Labor ("DOL")

has issued Advisory Opinions on the matter which this court may

consider.[19]

The DOL suggests that demutualization proceeds are plan

assets:

> The proceeds of the demutualization will belong to the plan
> if they would be deemed to be owned by the plan under
> ordinary notions of property rights.... In the case of an
> employee pension benefit plan, or where any type of plan or
> trust is the policyholder, or where the policy is paid for
> out of trust assets, it is the view of the department that
> all of the proceeds received by the policyholder in
> connection with a demutualization would constitute plan
> assets.

DOL Advisory Opinion 2001-02A, issued February 15, 2001.  This

determination requires "consideration of any contract or other

legal instrument involving the plan documents. It also requires

the consideration of the actions and representations of the

parties involved." DOL Advisory Opinion 92-02A, issued January

17, 1992.

---

[19] The court may consider agency interpretations under the principals set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837 (1984).  If "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.  If so, the court defers to the agency's interpretation. Throughout this inquiry, the court gives "considerable weight ... to an executive department's construction of a statutory scheme it is entrusted to consider ... [and] deference to administrative interpretations." Id. at 844.

1    Case law also supports the general proposition that
2    proceeds from demutualization are plan assets that belong to
3    either the plan participants or policyholders.  For example, in
4    Ruocco v. Bateman, the Ninth Circuit found that premium paying
5    participants of a long term disability policy deserved the
6    proceeds from demutualization more than the sponsoring employer.
7    See Ruocco v.  Bateman, 903 F.2d 1232, 1235 (9th Cir. 1990).

8    Similarly, in Bank of New York v. Janowick, the Sixth
9    Circuit concluded that "under relevant contract principals, we
10   would supply a term to the annuity contracts under Restatement
11   of Contracts, Section 204 entitling [employees] to unforseen
12   demutualization proceeds."  470 F.3d 264, 269 (6th Cir. 2006).[20]
13   In Janowick, the court observed that "the annuity contracts say
14   nothing regarding demutualization, which is not surprising as
15   demutualization was not legal in New Jersey (where Prudential
16   was located) when [the annuity contract was purchased]."  Id. at
17   271.  The court explained its position:

18       Section 204's comment d instructs courts to apply
         "community standards of fairness" to determine a term that
19       is reasonable in the circumstances.  Here, it is clear that
         none of the parties expected to receive the demutualization
20       proceeds, which will constitute a windfall to whoever
         receives them.
21

22   470 F.3d at 272.  For these reasons, the Sixth Circuit

23   _____

24       [20] Section 204 of the Restatement of Contracts states: "When
     the parties to a ... contract have not agreed with respect to a
     term which is essential to a determination of their rights and
25   duties, a term which is reasonable in the circumstances is supplied
     by the court."  Restatement of Contracts, § 204.
26

18

1  determined that the employees were entitled to the

2  demutualization proceeds.    The same logic applies to the

3  instant case.   Assuming that plaintiffs can assert that they

4  stood in a position to assert a right to the proceeds (i.e. they

5  were not strangers or officious intermeddlers) or had or have

6  ownership interest in the annuity contracts, "community

7  standards of fairness" suggest that this court could similarly

8  supply a term to the contracts entitling plaintiffs to the

9  demutualization proceeds.

10      For these reasons, the court grants plaintiffs leave to

11  file a third amended complaint.

12          **c.   Complaint fails to allege that plaintiffs were
                the contract holders at the time of**
13              **demutualization**

14      Not only is it unclear if plaintiffs were or are

15  "participants, fiduciaries or beneficiaries," but the complaint

16  fails to sufficiently allege plaintiffs' relationship to the

17  annuity contracts at issue.

18      As both parties concede, Prudential's demutualization plan

19  specifically provided that the entire value of Prudential would

20  be allocated to "owners" of "eligible policies" in the form of

21  cash, policy credits or common stock.   See Demutualization Plan,

22  Def.'s Request for Judicial Notice, Ex. 1 to Def.'s First Motion

23  to Dismiss.   The demutualization plan specifically defined "the

24  Owner of . . . a group annuity contract . . . [as] the Person or

25  Persons specified as the policyholder or contract holder in the

26  master policy or contract, as reflected in the applicable

19

1  Records" of Prudential as of December 15, 2000.  See Plan, §

2  5.3.  The plan further provided that "the identity of the Owner

3  of a Policy shall be determined without giving effect to any

4  interest of any other Person in such Policy."  See Plan, § 5.6.[21]

5      Here, the named policyholder on both annuity contracts was

6  the "Board of Trustees of the Sacramento Valley Electrical

7  Workers' Pension Plan."  See GA-8811, GA-8812, Verpent Decl. to

8  Def.'s First Mot. to Dismiss, Exhs. 1, 2.  In the second amended

9  complaint, plaintiffs do not allege with any specificity that at

10 the time Prudential demutualized, plaintiffs were the "Board of

11 Trustees of the Sacramento Valley Electrical Workers' Pension

12 Plan."

13     Although plaintiffs assert that they are successors to the

14 Trustees of the Valley Trust, the complaint is silent as to the

15 manner in which they became successors.  Moreover, it is not

16 clear that being successors to the Valley Trust is sufficient to

17 state a claim for demutualization proceeds – the demutualization

18 plan clearly states that the proceeds of the demutualization

19 shall go to the named contract-holder at the time of the

20 demutualization and without "giving effect to any interest of

21 any other Person in such Policy."  See Plan, § 5.6.  Plaintiffs

22 fail to allege on what grounds they should receive the

23 ──────────────

24      [21] Neither party suggests that the plan could not provide who
    the "owners" were for purposes of the demutualization.  As
    convoluted as the facts and law are already, the court has no
25  intention of examining this issue in the absence of briefing by the
    parties.  Accordingly, the court will proceed on the assumption
26  that the plan's provision governs.

1   demutualization proceeds as successors in interest.[22]

2       The complaint is rife with contradiction as to plaintiffs'

3   relationship to the two annuity contracts.  Initially, the

4   complaint states that "since on or before the filing of this

5   lawsuit, [plaintiffs] are trustees of the Sacramento Valley

6   Electrical Workers Pension Trust for purposes of this

7   litigation."  SAC ¶ 2.  The complaint also alleges that "the

8   only entity ever named in the group contracts described herein,

9   GA-881 and GA-8812, and reflected in the applicable records of

10  Prudential on or before 2001 is plaintiff Valley Trust."  Id. ¶

11  14.  It is not clear, however, that plaintiffs are in fact the

12  Valley Trust.  For example, the complaint also states that in

13  1982, "Plaintiff Valley Trust thereafter was inactive." SAC ¶ 9.

14  Though what that actually means is quite unclear.

15      Plaintiffs' allegation that they are the Valley Trust and

16  or successors to the Valley Trust is further complicated by the

17  role of the Area Trust.  The second amended complaint states

18  that on June 1, 2006, "the Area Trust became aware of the nature

19  of the demutualization consideration as shares issued to the

20  _____

21      [22]   The parties dispute the extent to which the court should
    consider a letter that was sent from the Valley Trust to defendant
22  in March of 1993.  The letter stated that the "contract holder as
    referred to in the [two annuity contracts] no longer exists, and
23  there will be no successor appointed."  See March 25, 193 Letter
    to D. Kostenbader, Verpent Decl. Ex. 4.  The letter is not
24  mentioned or relied upon in plaintiffs' complaint.  Accordingly,
    on a motion to dismiss for failure to state a claim, the court
25  cannot take the letter into consideration.  See United States v.
    Ritchie, 342 F.3d 903, 907(9th Cir. 2003).  This letter will no
26  doubt play a more significant role if and when the court is
    presented with a motion for summary judgment.

Valley. . . and made demand therefore as successor to the Valley

Trust and on behalf of the Valley Trust as original contract

holder." SAC ¶ 22.  "Prudential has refused to recognize either

the Valley Trust or Area Trust as the Contract-holder,

successor, or alternate funding agency and refuses to deliver up

the demutualization consideration, 71,000 shares of PRU stock."

Id.

In short, the complaint simultaneously alleges two

seemingly contradictory facts.  One, that "since on or before

the filing of this lawsuit, [plaintiffs] are trustees of the

[Valley Trust] for purposes of this litigation" and should have

been recognized as the contract holder at the time of

demutualization.  SAC ¶ 2.  And two, that the Area Trust should

have been recognized as the contract holder, "successor or

alternative funding agency" at the time of demutualization.  SAC

¶ 22.  While it is true that a complaint may contain alternative

pleadings, see Federal Rule of Civil Procedure 8(e), they

ordinarily should be set out in distinct causes of action.  Here

the mode of pleading is incoherent, and thus must be rejected.

Without more, these allegations do not support a claim that

plaintiffs are entitled to demutualization consideration.

**2.   Plaintiffs' Claim under ERISA § 409**

Plaintiffs also claim that defendant breached its fiduciary

duty under ERISA.  Section § 509(a)(2) of ERISA provides that a

"civil action may be brought . . . by a participant, beneficiary

or fiduciary for appropriate relief under section [409] of this

title...." 29 U.S.C. § 1132(a)(2).  Section 409 states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C.A. § 1109.  For the reasons discussed herein, plaintiffs fail to state a cause of action pursuant to section 409.

### a.   Plaintiffs' standing to sue under ERISA

Only participants, beneficiaries or fiduciaries may bring suit pursuant to section 409.  As previously noted, it not clear if plaintiffs are "participants, beneficiaries, or fiduciaries." See supra section III(A)(1)(a).  Although plaintiffs claim to be fiduciaries in their opposition brief, the complaint contains no factual allegations that plaintiffs acted in a fiduciary capacity.  Plaintiffs may be able to cure this defect and therefore, plaintiffs shall be given leave to amend.

### b.   Complaint fails to sufficiently allege that Prudential was a fiduciary of the plan

Section 409 provides for suits against plan fiduciaries. The complaint fails to set forth factual allegations that Prudential acted in a fiduciary capacity.[23]  Instead, the

---

[23]  See section III (A)(1)(a) of this order for the definition of "fiduciary" under ERISA.

1 complaint states that by escheating a portion of the

2 demutualization proceeds, and by withholding the remainder,

3 Prudential "acted as a party in interest and as an ERISA

4 fiduciary." SAC ¶ 26.  It is thus unclear whether plaintiffs

5 alleges that defendant was a party in interest, a fiduciary, or

6 both.  This is hardly a quibble, since the provision sued under

7 provides for suits against fiduciaries.

8    In the Ninth Circuit, "an ERISA fiduciary includes anyone

9 who exercises discretionary authority over the plan's

10 management, anyone who exercises authority over the management

11 of its assets, and anyone having discretionary authority or

12 responsibility in the plan's administration." Credit Managers

13 Ass'n v. Kennesaw Life & Acc. Ins. Co., 809 F.2d 617, 625 (9th

14 Cir. 1987).  When an insurance company administers claims for an

15 employee welfare benefit plan and has authority to grant or deny

16 the claims, the company is a "fiduciary" under ERISA.  Aetna

17 Life Ins. Co. v. Bayona, 223 F.3d 1030 (9th Cir. 2000).

18    It may be that Prudential had authority to grant or deny

19 claims or had discretionary authority over the annuity contracts

20 at issue, and should therefor be considered a fiduciary of the

21 plan.  The complaint, however, fails to set forth factual

22 allegations that defendant acted in such a manner.

23    **c.   Complaint fails to allege that plaintiffs are
         suing on behalf of the plan**

24

25 Assuming for the moment that Prudential is a fiduciary and

26 breached its fiduciary duty by pocketing proceeds that belonged

24

1  to the plans, the complaint does not allege that plaintiffs are
2  suing on behalf of the plans.

3       It is well established that an "individual beneficiary may
4  bring a fiduciary breach claim, but must do so for the benefit
5  of the plan." <u>Massachusetts Mut. Life Ins. v. Russell</u>, 473 U.S.
6  134, 144 (1985).  Any recovery for a violation of section 409
7  must be on behalf of the plans as a whole, rather than inuring
8  to individual beneficiaries.  <u>Horan v. Kaiser Steel Ret. Plan</u>,
9  947 F.2d 1412, 1417-18 (9th Cir. 1991), citing <u>Russell</u>, at 140.
10 <u>See also</u> <u>Parker v. BankAmerica Corp.</u>, 50 F.3d 757, 768 (9th Cir.
11 1995)("Although individual beneficiaries may bring a breach of
12 fiduciary duty claim against an ERISA plan administrator, they
13 must do so for the benefit of the plan.")

14      If plaintiffs are suing not as individuals, but as
15 fiduciaries (something which is not alleged in the complaint),
16 then, by virtue of being fiduciaries of the plans, plaintiffs
17 may be able to allege that their claim is brought in a
18 representative capacity for losses suffered to the plans.  The
19 complaint as currently worded, however, fails to allege that
20 plaintiffs are suing for the benefit of the pension plans.
21 Indeed, as previously noted, it is not clear how plaintiffs are
22 even connected to the two plans.

23 **B.   Preemption**

24      **1.   State Law Claim for Breach of Contract**

25      As previously discussed, both case law and Department of
26 Labor Advisory Opinions suggest that demutualization proceeds

1   are considered plan assets under ERISA.  Accordingly, ERISA

2   preempts plaintiffs' state law claim for breach of contract.[24]

3        ERISA's preemption clause provides that "[ERISA] shall

4   supersede any and all State laws insofar as they may now or

5   hereafter relate to any employee benefit plan...." 29 U.S.C. §

6   1144(a).  The Supreme Court recently explained that "Congress'

7   intent to make the ERISA civil enforcement mechanism exclusive

8   would be undermined if state causes of action that supplement

9   the ERISA § 502(a) remedies were permitted, even if the elements

10  of the state cause of action did not precisely duplicate the

11  elements of an ERISA claim." Aetna Health Inc. v. Davila, 542

12  U.S. 200, 216 (2004).  Indeed, "the express pre-emption

13  provisions of ERISA are deliberately expansive, and designed to

14  'establish pension plan regulation as exclusively a federal

15  concern.' " Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46

16  (1987)(quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S.

17  504, 523(1981)); see also Board of Trustees v. H.F. Johnson,

18  Inc., 830 F.2d 1009, 1016 (9th Cir. 1987)("ERISA preemption is

19  to be construed broadly").

20       In the instant case, plaintiffs' state law breach of

21  contracts claim directly relates to the two pension plans –

22  plans which both parties agree are employee benefit plans under

23  ERISA.

24  Moreover, the remedy plaintiffs seek under the state law cause

25  _____

26       [24] This conclusion which departs for the first opinion is a
    necessary result of the analysis undertaken above.

1   of action is essentially the same as the remedy sought under

2   section 502(a) of ERISA.  Under both causes of action,

3   plaintiffs seek the recovery of demutualization proceeds which,

4   according to the Department of Labor and case law, may be

5   construed as assets of ERISA plans.  For these reasons,

6   plaintiffs' state law cause of action is preempted and must be

7   dismissed.[25]

8       **2.   California's Unclaimed Property Law**

9       Plaintiffs also claim that defendant wrongfully escheated

10  funds to the State and that the funds escheated were only a

11  portion of the amount owed to plaintiffs.  Defendant argues that

12  plaintiffs' claims are foreclosed by California's Unclaimed

13  Property Law ("UPL").  <u>See</u> Def.'s Mot. to Dismiss at 7.

14      Whether ERISA preempts California's UPL is an unsettled

15  question.  <u>See</u>, <u>e.g.</u>, <u>Aetna Life Insurance Company v. Borges</u>,

16  869 F.2d 142 (2nd Cir. 1989)(ERISA does not preempt state

17  unclaimed property law); <u>Commonwealth Edison Company v. Vega</u>,

18  174 F.3d 870 (7th Cir. 1999)(ERISA does preempt state unclaimed

19  property law).   The one Ninth Circuit district court

20  decision on this issue is persuasive and adopts the reasoning of

21  the Seventh Circuit.  In <u>Manufacturers Life Ins. Co. v. East Bay</u>

22  <u>Restaurant and Tavern Retirement Plan</u>, the court concluded that

23  an annuity contract which provided for the return of premiums to

24

25      [25] Once again, however, the conclusion is premised upon the
    plaintiffs suing for ERISA breaches. If it is clear that they do
    not and cannot claim ERISA breaches, it may be that a state claim
26  possibly lies.

1  an ERISA plan in the event that an annuitant is not located

2  after a certain date, was a plan asset.  57 F. Supp. 2d 921, 924

3  (N.D. Cal. 1999). Accordingly, the court found that, "[t]his is

4  not a simple instance where the state is attempting to step into

5  the shoes of beneficiaries pending their location.  Instead,

6  California seeks to insert itself between the ERISA plan and an

7  asset of the plan, the annuity contract." Id.  The court found

8  it persuasive that the plan participants had a direct interest

9  in the funds confiscated by the state:  "Here . . . the state

10 wishes to seize funds to which the ERISA plan has a contractual

11 right." Id.  As such, the court found that ERISA preempted the

12 California UPL.

13      In the instant case, the demutualization proceeds are plan

14 assets and were escheated to the state.  In so far as the

15 California UPL interferes with the relationship between

16 plaintiffs and defendant, the UPL is preempted by ERISA.

17 Plaintiffs' claim with the State Controller, for the funds

18 already escheated, is not preempted.

19                              **IV.**

20                          **Conclusion**

21

22      In sum, plaintiffs' second amended complaint fails to set

   forth sufficient factual allegations to state a claim under

23

   ERISA.  As previously noted, plaintiffs created a suspicion of a

24

   legally cognizable claim (namely, that they are entitled to six

25

26 million dollars in demutualization proceeds), however, the

                              28

1  complaint must contain more in order to survive a motion to

2  dismiss.   The factual allegations "must be enough to raise a

3  right to relief above the speculative level." Twombly, 127 S.Ct.

4  at 1964-65.

5       The court will, however, grant plaintiffs leave to amend.

6  Federal Rule of Civil Procedure 15 provides that "leave to amend

7  shall be freely given when justice so requires." Fed. R. Civ. P.

8  15(a).  Absent prejudice, or a "strong showing" of the other

9  factors, such as undue delay, bad faith, or dilatory motive,

10 "there exists a presumption under Rule 15(a) in favor of

11 granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc.,

12 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  Generally,

13 leave to amend is only denied when it is clear that the

14 deficiencies of the complaint cannot be cured by amendment.

15 DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir.

16 1992).

17      Although this order marks the second time the court has

18 granted plaintiffs leave to amend, and although the second

19 amended complaint is almost as problem-riddled as the first,

20 plaintiffs may be able to cure the defects.   This case was only

21 recently filed and no scheduling conference has occurred.

22 Accordingly, the prejudice to defendants is minimal.   For these

23 reasons, the court hereby ORDERS as follows:

24      1.   Defendant's Motion to Dismiss the Second Amended
             Complaint is GRANTED.
25
   ////
26

2.   Plaintiffs' shall file an amended complaint within 30
     days of the date of this order.

IT IS SO ORDERED.

DATED: July 5, 2007.


_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT