UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

A.C. STEELMAN, FRAN MCDERMOTT, TRUSTEES OF THE SACRAMENTO AREA ELECTRICAL WORKERS' PENSION TRUST FUND, as successor to and as TRUSTEES on behalf of SACRAMENTO VALLEY ELECTRICAL WORKERS' PENSION TRUST,

    Plaintiff,

    v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, PRUDENTIAL FINANCIAL, INC.,

    Defendants.
_____/

NO. CIV. S-06-2746 LKK/GGH

O R D E R

Plaintiffs allege that they are the trustees of the Sacramento Valley Electrical Workers Pension Trust ("Valley Trust") and the trustees of the Sacramento Area Electrical Workers Pension Trust ("Area Trust"). Plaintiffs have brought claims under the Employee Retirement Income Security Act (ERISA) and state law against defendants Prudential Financial, Inc. and the Prudential Insurance Company of America (collectively, "Prudential"), who have allegedly

withheld proceeds owed to plaintiffs. The court previously granted two motions to dismiss with leave to amend. Pending before the court is defendants' motion to dismiss plaintiffs' third amended complaint. For the reasons explained below, the motion is granted in part and denied in part, without leave to amend.

## I. Background[1]

**A. Valley Trust**

The Valley Trust was created in 1967 by a local union and one of its employers, the Sacramento Valley Chapter of the National Electrical Contractors Association ("NECA"). Third Am. Compl. ("TAC") ¶ 4. The trust maintained a defined benefit pension plan until the plan terminated in 1982. TAC ¶ 4. Plaintiffs allege that they constitute the "duly appointed" board of trustees for the Valley Trust. TAC ¶ 2. The Valley Trust Agreement provides that NECA had to approve of five of the ten requisite trustees.[2] Valley Trust Agreement, § 3.1. NECA, however, allegedly "ceased to exist on or before 1992."[3] Second Am. Compl. ("SAC") ¶ 2.

---

[1] The background to this action has been set forth in the court's April 4, 2007 order ("April Order") and the July 6, 2007 order ("July Order"). The court incorporates relevant portions here.

[2] Plaintiffs have alleged that the Valley Trust is a Taft-Hartley trust fund. Under the Labor Management Relations Acts ("LMRA"), the boards of such funds must have equal employer-employee representation. 29 U.S.C. § 186.

[3] This fact was pled in plaintiffs' previous complaint. Although it has not been pled in plaintiffs' current complaint, plaintiffs do not dispute the accuracy of the statement. Cf. Sicor Ltd v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir.) (party who believes prior factual allegation was erroneous may attempt to explain the error in which case the trial court may accord the

2

**B. Group Annuity Contracts**

At issue in this case are two annuity contracts issued by Prudential. In 1982, the Valley Trustees voted to terminate the existing defined benefit pension plan and used the trust's accumulated assets of approximately $12 million dollars to purchase group annuity contracts from Prudential. TAC ¶ 8. When the Valley Trustees purchased the annuity contracts, they named themselves, "Board of Trustees of Sacramento Valley Electrical Workers' Pension Plan," as the contract holders. TAC ¶ 9; GA-8811, GA-8812, Verpent Decl. to Defs.' First Mot. to Dismiss, Exs. 1, 2. The purpose of the contracts was to provide accrued pensions to the participants of the terminated pension plan.

**C. Prudential's Demutualization**

In 2000, Prudential adopted a plan to demutualize, that is, to reorganize from a mutual life insurance company to a stock life insurance company. The demutualization plan was approved by the New Jersey Insurance Commissioner. As a result of the demutualization, the entire value of Prudential was allocated among Prudential's eligible policyholders in accordance with terms set out in the demutualization plan. The demutualization plan provided that the entire value of Prudential would be allocated to owners of eligible policies in the form of cash, policy credits, or common stock in a newly created holding company. See Demutualization Plan, Defs.' Request for Judicial Notice, Ex. 1 to Defs.' First

---

explanation due weight).

Motion to Dismiss.

The demutualization plan defined "the Owner of . . . a group annuity contract . . . [as] the Person or Persons specified as the policyholder or contract holder in the master policy or contract, as reflected in the applicable Records" of Prudential as of December 15, 2000. See Demutualization Plan, § 5.3. Plaintiffs admit that in 2000, the Valley Board had a number of vacancies and was at that time "inoperative." Pls.' Opp'n at 18. Nevertheless, they maintain that the board as a legal entity never ceased to exist. The demutualization plan provided that should a contract holder not be located, the demutualization proceeds would be paid in cash and escheated to the state where the contract was issued. See Demutualization Plan, § 8.1(f).

**D. Claims Asserted**

In the current complaint, plaintiffs allege four causes of action. The first and second causes of action are predicated upon ERISA section 502(a)(2) and 502(a)(3), respectively. The third cause of action is pled in the alternative. Plaintiffs aver that "[s]hould the Valley Trust been found to be defunct prior to 2001 then the Area Trust was and is its successor, recognized as such by Prudential through its communications with Area Trust employees, and as such is entitled to demutualization consideration."[4] TAC ¶ 37. The fourth cause of action is a breach of contract claim

---

[4] The Area Trust was created in 1981 by the local union and the Sacramento Electrical Contractors Association ("SECA") to provide pension benefits for union members through a new plan. TAC ¶ 5.

4

under state law.

## II. Standard

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

As the Supreme Court observed, Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 1965, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[5]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

---

[5] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

5

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). That said, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

**A. Section 502(a)(3) Claim**

Section 502(a)(3) of ERISA allows a plan participant, beneficiary, or fiduciary to seek "appropriate equitable relief" to redress violations of ERISA. 29 U.S.C. § 1132(a)(3). Claims under this section, unlike claims under section 502(a)(2), may be brought against non-fiduciaries, but only injunctive and other appropriate equitable relief are permitted.

**1. Standing as Plan Fiduciaries**

Plaintiffs allege that they are plan fiduciaries because they are "the Board of Trustees of the [Valley Board] duly appointed as such under the terms of the [Valley] Trust Agreement." TAC ¶ 2. Defendants respond that plaintiffs could not have been appointed to the Valley Board, because the Valley Trust Agreement provides that NECA had to approve of five of the ten requisite trustees, but

6

NECA allegedly "ceased to exist on or before 1992." SAC ¶ 2. Plaintiffs now argue that SECA is the successor employer association to NECA,[6] because SECA was allegedly awarded the NECA Sacramento Chapter charter on December 1, 1992. Because plaintiffs are entitled to the benefit of reasonable inference from the allegation that they were "duly appointed" as the Valley Trustees, the court finds that plaintiffs have pled a plausible basis for relief.[7]

Previously, in the first amended complaint, plaintiffs alleged that the Area trustees appointed themselves as successor trustees of the Valley Trust on November 15, 2006 under a "Certification of Successor." The court ruled that plaintiffs were not entitled to demutualization consideration based upon this successor theory, as pled. Defendants complain that the plaintiffs have now pled a contradictory allegation that the powers of the trust always remained with the Valley Trust -- a complaint that is not without foundation. Nevertheless, it is at least conceivable that plaintiffs might be able to prove that they were, in the

---

[6] Defendants vigorously dispute this assertion and rely upon a letter from the California Controller's Office that rejected the same. The letter, however, references numerous factual issues that can only be addressed on a motion for summary judgment, not a motion to dismiss. Similarly, while plaintiffs have requested that the court take judicial notice of the facts in <u>Arden Electric, et al. v. Local 340, Int'l Brotherhood of Electrical Workers</u>, N.L.R.B. 654, 656 (1985), which purportedly establish that SECA was the successor to NECA, this is a factual issue that should be addressed on summary judgment.

[7] To the extent that defendants have evidence that SECA was not, in fact, the successor organization to NECA, they should present this evidence in a motion for summary judgment.

7

alternative, properly appointed trustees of the Valley Trust.

Defendants also argue that plaintiffs are barred from bringing suit because the Valley Trust Agreement provides that "[n]o member of the Board of Trustees may participate in any decision which involves his interest as a Covered Employee of the Pension Plan."[8] Valley Trust Agreement, § 3.7. Read in context, however, this provision appears to limit the ability of board members to participate in decisions that implicate their own, individual interests (such as a particular board member and participant's claim for disability retirement), rather than decisions that implicate the trust as a whole. The preceding sentence of the Valley Trust Agreement states that "the Board of Trustees shall not discriminate in favor of Covered Employees who are members of the Board of Trustees." Valley Trust Agreement, § 3.7. Furthermore, if board members were barred from decisions affecting their general interests as participants, they would be barred from participating in all decisions involving plan assets. Defendants' interpretation would therefore lead to an absurd result.

////

---

[8] Plaintiffs could potentially be "barred from bringing suit" in two different ways: as trustees who (presumably) voted to bring this action as the Valley Trust or as participants/beneficiaries of the pension plan. Defendants argue that, with regard to the latter possibility, plaintiffs have no direct right to demutualization consideration because the demutualization plan only gives such rights to the contract holder -- not the ultimate beneficiaries. Because the court concludes the trust agreement does not bar plaintiffs' ability to bring suit as trustees, it declines to address at this point whether plaintiffs independently have standing as participants.

**2. Demutualization Consideration**

Defendants also renew their argument that plaintiffs are not entitled to demutualization consideration because the demutualization plan exclusively controls who is entitled to those proceeds. The court addressed this issue in its previous order and concluded that plaintiffs may have an ownership interest in demutualization consideration as a plan asset, relying on Ruocco v. Bateman, 903 F.2d 1232, 1235 (9th Cir. 1990), and Bank of New York v. Janowick, 470 F.3d 264, 269 (6th Cir. 2006). July Order at 17-19.

Defendants now argue that those cases dealt with the question of who is entitled to demutualization consideration after it has already been distributed and in accordance with the terms of the demutualization plan -- not whether one may obtain demutualization consideration in a manner contrary to the plan or from the insurer itself. Here, however, it is not clear that plaintiffs are requesting relief in a manner contrary to the plan. Rather, plaintiffs allege that they are, in fact, the Valley Board, and that the Valley Board is entitled to the demutualization consideration as the named owner of the group annuity contracts. Moreover, the pre-distribution versus post-distribution distinction drawn by defendants is immaterial to the question of whether plaintiffs may be entitled to the demutualization consideration. See N. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Func v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir. 1990) (contributing employer is a fiduciary with respect to

contributions due but not yet paid).

Defendants also argue that even if there was a right to demutualization consideration, that interest flowed only to the Valley Trust or Board, neither of whom could have continued to exist when Prudential demutualized, because there was an insufficient number of trustees to constitute a quorum. It appears undisputed that when Prudential demutualized, most of the trustees had either died or resigned. Pls.' Opp'n at 18 ("Plaintiffs . . . admit that in June 2000 the Board of Trustees of the Valley Trust had a number of vacancies and was at that time inoperative."). Nevertheless, plaintiffs maintain that while the Valley Board may have been inoperative, the board as a legal entity continued to exist.

In Aslanian, the court held that "resignation of the employer trustees would have resulted in the inability of the funds to continue operation." Aslanian v. Weltz, 1997 U.S. Dist. LEXIS 15351 (S.D.N.Y. Jun. 21, 1977). Defendants rely on this language to argue that the Valley Board was defunct at the time of demutualization. Nevertheless, this language merely states the obvious: that a trust cannot "continue operation" -- that is, take action -- without its requisite quorum. It does not stand for the stronger proposition that a board ceases to exist every time a board member resigns and the board of trustees dips below its quorum requirements.[9]

---

[9] In fairness, the issue presented by this case is likely very different than that presented by a situation in which only one or

10

1    The powers of the Valley Board are not dependent upon any
2 particular set of trustees.  See, e.g., Moeller v. Superior Court,
3 16 Cal. 1124, 1131 (1997) ("The powers of a trustee are not
4 personal to any particular trustee but, rather, are inherent in the
5 office of trustee."); Corbin v. Blankenburg, 39 F.3d 650 (6th Cir.
6 1994) ("Nothing in . . . ERISA suggests that a civil action brought
7 by an ERISA trustee is personal to the particular individual who
8 held the office when the suit was filed.").  Accordingly, it is
9 possible that Valley Board owned the annuity contracts, and was
10 still in existence, at the time of demutualization.

11    Defendants also argue that even if the Valley Board was in
12 existence in 2000, Prudential was prohibited from distributing the
13 demutualization consideration to the board because the composition
14 of the board at that time failed to satisfy the LMRA's equal
15 employer-employee representation requirement.  The argument is
16 unavailing.  The LMRA strictly regulates the payment of money by
17 employers to employees and labor unions (for fear of corruption and
18 bribery) subject to certain exceptions, one of which pertains to
19 employee benefit trust funds with equal representation boards.  29
20 U.S.C. § 186(c)(5)(B).  Nevertheless, it appears that the pertinent

---

two trustees resign and successor trustees are appointed. In the previous motions to dismiss, the parties disputed the effect of a 1983 letter sent from the Valley Trust to defendants, which reportedly stated that the "contract holder as referred to in the [two annuity contracts] no longer exists, and there will be no successor appointed." Verpent Decl., Ex. 4. Nevertheless, as this court has previously ruled, this letter is not properly before the court on a motion to dismiss. July Order at 21. If defendants move for summary judgment, the court may then consider it.

11

LMRA restriction applies primarily to employers.[10] Because defendants were not acting as plaintiffs' employers, they were not bound by this restriction.

### 3. Equitable Relief

Section 502(a)(3) of ERISA only authorizes equitable rather than legal relief. Here, defendants argue that the relief requested is legal, given that plaintiffs seek the value of 71,000 shares of Prudential stock plus interest. Nevertheless, at least some forms of relief requested in the complaint, such as accounting for profits, are equitable. See Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999 (8th Cir. 2004) (permitting award of interest on wrongfully delayed benefits as equitable relief under ERISA). Similarly, to the extent that the demutualization consideration at issue has not been escheated to the State of California, a constructive trust may also be available to

---

[10] Specifically, the restriction in section a applies to "any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value." 29 U.S.C. § 186(a).
  It is possible that defendants would have incurred liability under section d, 29 U.S.C. § 186(d) ("Penalties for violations"), which is worded somewhat more broadly than section a. That provision states that "[a]ny person who participates in a transaction involving a payment . . . to a joint labor-management trust fund . . . and willfully and with intent to benefit . . . persons he knows are not permitted to received a payment . . . shall . . . be guilty of a felony." Even if true, however, this defense would turn on questions of fact (e.g., whether defendants knew at the time that there was no equal representation on the board) inappropriate for resolution in the present posture. Moreover, it is not clear the LMRA provision has any application to the instant issue.

12

plaintiffs. See Sereboff v. Mid Atlantic Med. Servs. Inc., -- U.S. --, 126 S. Ct. 1869 (2006) (upholding use of constructive trust as "appropriate equitable relief" under ERISA).

**B. Section 502(a)(2) Claim**

Section 502(a)(2) of ERISA allows a plan participant, beneficiary, or fiduciary to bring an action against plan fiduciaries for appropriate relief. 29 U.S.C. § 1132(a)(2). A fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such [fiduciary] breach." 29 U.S.C. § 1109.

Here, defendants argue that plaintiffs have not adequately pled that Prudential was acting as an ERISA fiduciary in connection with its distribution of demutualization consideration. See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) (the "threshold question" for a claim of breach of an ERISA fiduciary duty is "whether that person was acting as a fiduciary . . . when taking the action subject to complaint."). Specifically, defendants argue that compliance with the terms of the demutualization plan and agreement with New Jersey regulators precludes the possibility of a breach of an ERISA fiduciary duty, because to hold otherwise would force defendants to choose between compliance with New Jersey law and ERISA. As discussed above, however, plaintiffs allege that they are the Valley Board of Trustees, who were the named owners of the contracts, and that even under the terms of the demutualization plan, they were entitled to demutualization consideration. Accordingly, any supposed conflict between the demutualization plan

13

and ERISA is, at this point, merely speculative.

**C. Breach of Contract**

Plaintiffs' third amended complain also includes a breach of contract claim under state law. As discussed in the court's previous order, this claim is preempted by ERISA. July Order at 25-27; see also Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1225-56 (9th Cir. 2005) ("A state cause of action that would fall within the scope of [ERISA section 502(a)'s] scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme."). Accordingly, this claim is dismissed without leave to amend.

**D. Unclaimed Property Law**

Defendants argue that the California Unclaimed Property Law ("UPL") bars plaintiffs' claims, because approximately $2 million dollars have already been escheated to the State of California, and state law relieves the former property holder of all liability for the amount escheated. Insofar as plaintiffs claim an alleged interest in proceeds above that which was already escheated, and which are still in defendants' possession, obviously no immunity would be conferred by the UPL. With regard to the proceeds already escheated, the court has previously ruled on this issue. To the extent the UPL "interferes with the relationship between plaintiffs and defendant," July Order at 28 -- which is to say, to the extent that the Valley Board was entitled to demutualization proceeds under the demutualization plan but such proceeds were escheated -- the immunity conferred by the UPL would not bar plaintiffs' claim

14

under ERISA section 502(a)(2) because of preemption.

## IV. Conclusion

For the reasons explained above, the motion to dismiss is granted in part and denied in part, without leave to amend.

IT IS SO ORDERED.

DATED: November 16, 2007.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT